NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0122n.06

No. 24-5507

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 03, 2025
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF TENNESSEE |
| JATALLY WILLIAMS, | ) |
| Defendant-Appellant. | ) OPINION |
| | ) |

Before: SUTTON, Chief Judge; GRIFFIN and MATHIS, Circuit Judges.

GRIFFIN, Circuit Judge.

Following his conviction for possessing a firearm as a felon, defendant Jatally Williams claims on appeal that the district court erroneously declined to suppress evidence discovered during a traffic stop and subsequent pat down under *Terry v. Ohio*, 392 U.S. 1 (1968). We affirm.

I.

Investigator William Saulsbury of the Johnson City, Tennessee, Police Department was surveilling an apartment for drug-trafficking activity following several tips from confidential informants. There he observed a black Nissan Rogue SUV pull into the parking spot in front of the apartment. As soon as it pulled up, a man came out of the apartment carrying a luggage bag, put the bag in the trunk of the SUV, and returned to the apartment (along with the SUV's passenger, who was later identified as Williams). Defendant was inside for about ten minutes before departing in the SUV. These events rose Saulsbury's suspicions that he had just observed a drug deal.

Saulsbury tailed the SUV, observed it speeding, and activated his lights and siren to initiate a stop. The SUV "continued on" (evading another law enforcement vehicle in pursuit) for about a minute until it was "boxed in" by other traffic at a red light. Officers approached the SUV with weapons drawn and ordered the occupants to exit the SUV. As officers escorted Williams from the vehicle and handcuffed him, one officer asked is there "anything on you that's going to poke, stick, or cut me?" Williams replied that he had "a gun." A pat down of his waistband confirmed Williams's admission.

A grand jury indicted defendant for being a felon in possession of a firearm (and other crimes not relevant here). Williams moved to suppress the evidence recovered from the traffic stop. Pertinent here, defendant contended the stop and subsequent frisk that resulted in the discovery of the gun in his waistband violated the Fourth Amendment. The district court denied the motion and defendant's motion for reconsideration. It subsequently convicted defendant at a bench trial of being a felon in possession, in violation of 18 U.S.C. § 922(g)(1), and imposed a 95-month sentence. Williams timely appeals from the district court's denial of his motion to suppress the handgun that was tucked in his waistband.

## II.

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend. IV. This protection extends "to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008) (citation omitted). In conducting these *Terry* stops, an officer may temporarily detain an individual so long as there is "a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (internal quotation marks omitted). And following a lawful *Terry* stop, officers may frisk a stopped individual where there is "reasonable

suspicion that the person searched may be armed and dangerous." *United States v. McCallister*, 39 F.4th 368, 373 (6th Cir. 2022) (citation omitted); *see also Terry*, 392 U.S. at 30. For both a detention and frisk under *Terry*, reasonable suspicion requires "more than a mere hunch" but less than probable cause. *McCallister*, 39 F.4th at 374 (internal quotation marks omitted). This is an objective, totality-of-the-circumstances inquiry. *Id.* at 374–75.

The district court concluded that law enforcement's detention and pat down of defendant did not violate the Fourth Amendment, reasoning that Saulsbury's observation of a suspected drug transaction, the SUV's failure to immediately stop, and Williams's admission of possessing a firearm together justified the officers' actions. On appeal, we review the district court's factual findings for clear error and legal conclusions de novo, and we consider the evidence in the light most favorable to the government. *Campbell*, 549 F.3d at 370. For the reasons that briefly follow, we discern no error on appeal.

Traffic stops are "fraught with danger." *Michigan v. Long*, 463 U.S. 1032, 1047 (1983). Law enforcement officials are of course entitled to take reasonable protective measures for their safety, *United States v. McMullen*, 103 F.4th 1225, 1229, 1231 (6th Cir. 2024), and it is "well-established that, during a traffic stop, an officer may order passengers out of the vehicle pending the completion of the stop," *United States v. Pacheco*, 841 F.3d 384, 390 (6th Cir. 2016). Before pulling over the vehicle and demanding Williams exit, officers: (1) suspected the SUV's occupants (including Williams, who went inside the apartment) had completed a drug-trafficking transaction—which are often accompanied with firearms, *see id.* at 392—and knew a coconspirator was arrested with firearms; and (2) observed the speeding SUV fail to immediately pull over, *see United States v. Ledbetter*, 929 F.3d 338, 347 (6th Cir. 2019) ("[T]he failure to immediately pull over and any attempts to evade officers . . . can support a reasonable suspicion.").

These facts, in their totality, give rise to at least a "moderate chance" that Williams was both engaged in criminal activity and that he was armed and dangerous. *McCallister*, 39 F.4th at 375.

Defendant's arguments to the contrary do not persuade. He largely contends the government should have done more. In his view, law enforcement officials should have investigated the apartment further (like obtain a search warrant) or provided direct evidence linking Williams to that apartment or to trafficking narcotics. To adopt such an argument, however, would erase the difference between the reasonable-suspicion and probable-cause standards. Williams further asserts his conduct was "innocuous," and thus the officers acted on a mere hunch. But "[r]easonable suspicion can arise from innocent behavior," *United States v. Jordan*, 100 F.4th 714, 722 (6th Cir. 2024), and Williams's behavior was not innocent. Given information gleaned from credible informants; Saulsbury's observations, training, and experience; the SUV's evasive conduct; and Williams's confession to being armed, it was reasonable to suspect that he was engaged in criminal activity and was armed and dangerous. In light of that danger, the officers reasonably chose to draw their weapons and use handcuffs to protect themselves. *See Dorsey v. Barber*, 517 F.3d 389, 399 (6th Cir. 2008).

### III.

For these reasons, we affirm the judgment of the district court.